We'll hear the next case, Mirlis v. Greer. May it please the court, my name is David Grodberg and I'm here today on behalf of Daniel Greer and Yeshiva of New Haven. I was also one of the trial counsel in the district court. We've raised a number of issues in our brief, all of which in our view warrant a conclusion that a new trial is merited in this case. There are a number of factors, unique in my view in this case, that inform most if not all of our arguments. The subject matter in this case was very volatile, sexual abuse claims against a clergy member. And as a result, as we've noted, that raised a significant potential for passion and for prejudice to take over the courtroom. We also had a plaintiff who had filed a criminal complaint that at the time of the trial remained pending. That brought the Fifth Amendment very much into play in this case and it played a huge role in the trial and in our view an inappropriately large role and opened the door to abuse. Also had a very unique situation involving the plaintiff's other key witness, Aviad Hack, who was formerly principal of the Yeshiva school. Mr. Hack was presented at trial only by deposition excerpts because he had evaded service of process and that posed another huge hurdle for the defense because at that deposition, which was taken during the discovery phase of the case, I don't think it was anticipated by anyone that testimony was being preserved for use at trial. Mr. Hack was literally a, he was a local resident in New Haven at the time his deposition was taken, so there's no reason to expect that he'd be unavailable for trial. And my co-defense counsel did not pursue the same line of questioning that one would have at trial. So again, that was another way in which the defense very much hamstrung. I want to talk a little bit about one of the arguments we've raised that it ties into all those factors and that is the district court's denial of our motion for relief from judgment based upon new evidence that came to the defense attention after the time for the filing of post-verdict motions had passed. The main point of disagreement between the defense and the district court had to do with the significance and potential impact of the new evidence. The, in particular, the requirement that a finding be made that new evidence probably would have yielded a different result and that it was not merely cumulative or impeaching. In considering the impact that this new evidence would have had, and it was from a former teacher at the Yeshiva who had no allegiance to either party, who reached out to a lawyer after reading about the verdict. Did he have some antagonism toward Hack? He had a disagreement during his term of employment with Mr. Hack, to be sure. Did the employment end it because of disagreements? He ended it because he felt that a request had been made of him that he was not comfortable with, namely to change a failing grade to a passing grade. I'm just questioning the suggestion that he was completely neutral and impartial. I don't know that he was. He obviously would have come into the court with very well-formed opinions and that would have been one of the main reasons why we would have wanted to put him on, but in terms of was this someone obviously from the defense camp or the plaintiff's camp, he'd been out of the school for over a decade. It would be difficult to redo, reopen a trial just because some witness shows up and says, now that I've seen the verdict and read about the case, I have something to offer. I mean, if you did that every time someone came forward, you'd be retrying cases all the time. I agree, Your Honor, but this is not every case. This is the challenges we face. I wonder if you should go on to one of your other points because you've got three minutes left. I mean, the Fifth Amendment point, what should have been done differently? What should the trial judge have done differently in your view? The trial judge should have sustained my earlier objections to the questioning of counsel. This case presented the exact scenario that was raised in the dissent by Judge Winter and Brinks- That was a dissent. That was a dissent which- Wasn't this a critical factual issue, whether he sexually abused the plaintiff? That's a critical factual issue, so the probative value is really high. Don't you agree with that? To a point, yes, Your Honor. And we didn't question that he was entitled, the black letter law, that he's entitled to ask the questions, and he's entitled to get the negative inference charge. No quarrel with that. What should the trial court have done differently is my question. The trial court should have cut off questioning before it did when it became clear that plaintiff's counsel was not simply trying to elicit the point that Your Honor noted, which was that you can ask about the allegation of sexual abuse. If you get the invocation, you move on. And as an example of the extent to which the Fifth Amendment became a sword in the hand of opposing counsel, I cited to when Mr. Greer was on redirect, just simply to lay the foundation for some documents with Mr. Hack that had been presented to him by Mr. Hack. Plaintiff's counsel went right back to the Fifth Amendment area and had to be repeatedly admonished by the trial court before he finally stopped. That gives a window into what was going on here. I mean, there certainly were some things that happened that are problematic. What is the standard here? Is it, what's the ultimate question? Whether the defendants were deprived of their due process rights because the trial was so unfair? I mean, what are we trying to figure out? We've raised it as an evidentiary claim, and the Rule 60b-2, they're both abuse of discretion standard. The point we've made as to- Even assuming there's an abuse of discretion here, it doesn't mean reversal. I mean, what I'm trying to find out is what are we trying to decide in terms of the ultimate merits? With respect to the newly discovered evidence, the question- No, no, I'm focusing on the evidence, the Fifth Amendment. The Fifth Amendment is whether the defendants were so prejudiced that a new trial was merited, that the use- And so, how were they so prejudiced that a new trial was warranted? The plaintiff was permitted not just to elicit, to pose questions and elicit answers along the lines that everyone expected, but to go beyond that and, in essence, testify through counsel, which is the example that, raised by Judge Winter, admittedly in dissent. But Judge Shea recognized, prior to trial, the merit in the concerns raised in that dissent and indicated that he would take steps to try to stop that. In our view, he let it go way too far, and as a result, this case became about the Fifth Amendment and not about the evidence. The jury deadlocked, so the case wasn't as much of a foregone conclusion as- Well, when you say they were deadlocked, what does that mean? The jury, well- It took them a while to decide the case? The jury, 24 hours into deliberation on a case where the defendant had invoked his Fifth Amendment privilege on the question of, did you sexually assault the plaintiff? If the jury reported an inability to reach a verdict on that very question, not on damages, on that very question, 24 hours. I think, candidly, when they got the case a day before, people weren't- That meant one juror holding out and then being persuaded. I mean, it's hard to know really what happened. So you're over time, but just on the damages, if this were New York, I would be troubled, but there do seem to be Connecticut cases that uphold $7 million verdicts. There's a case with a $15 million verdict in sexual abuse cases. I didn't cast our argument in terms of comparing specific Connecticut cases. We did in the district court briefing because the Connecticut Supreme Court had issued, excuse me, a decision that Judge Shea raised during our argument questioning whether case by case comparison is continuing to be appropriate. Our point there really is the record, what they presented from Mr. Merlis, what he testified to, how did this impact your life, which is really the beginning and the end of his damage claim, it's just not there. It cannot support a $15 million finding. If one takes the view that, hey, it's a sex abuse case, no amount of money is too high, then I understand it. But unless you take that view, plaintiff has to prove their case, and they didn't do it. Thank you, Your Honor. May it please the court, my name is Antonio Pomvera. I represent Ailey Merlis, the appellee. Three or four major points to respond both to the questions from the court and to Mr. Goodberg's argument. First, as to the Fifth Amendment charge, there seems to be two arguments. One is that Judge Shea, the trial court judge, did not grant the motion that I should not be able to allow, to ask any questions that would invoke a Fifth Amendment claim. As to that, it makes no sense given that the defendant himself proposed an adverse inference charge. So you can't have somebody- I heard not any question. I heard that you were permitted to ask too many questions. Yes, so there's two points at which the issue of Fifth Amendment instruction and allowance of questioning came up. One was the one I just mentioned, which was pretrial, where the defense said no questions at all, denied. Then we get to the trial. In the trial, there were two questions, this is page 22 of my brief, two questions that are at issue on appeal. All the other questions that make up this so-called quote unquote spectacle that is described in the appellant's brief. Either the defendant answered without the trial court ruling, or no objection was made. So there is no point- Could you just address the general concern that Judge Winters spoke to in his dissent about how when you have a long series of questions, the jury's ultimately looking to the question rather than the answers, right? And so the counsel, what constraints are there on what you can ask and how long you can ask? How do we think about that? I think that's the question in the case. The constraints are exactly the ones that Judge Shea imposed on me. The restraints are you may ask a certain number of questions, and at the moment that it becomes more prejudicial than probative, I'm going to stop you. And that's precisely what he did. That's just a general feeling. Well, it was two questions in, in this case. And so it may be- Did you have a proffer ahead of time to show that you had a foundation for each of those questions? I don't recall if there was an official proffer, but there was never an argument from defense that they weren't justified questions. But, so I think number one, if there is a point at which it becomes unfair and we accept Judge Winter's dissent as a governing opinion in the circuit- No, no, no, it's a concern. It is. It's a legitimate concern as a kind of a common sense matter that one might be worried that a jury would be unduly influenced because actually counsel is testifying. I think it's a very legitimate concern. Here's why I don't think it's a concern in this case. Not only were my questions cut off after two questions, objection, invocation of privilege, and then no testimony. But to the extent that anything that I did during this trial was prejudicial beyond the court's ability to rule on it in the moment, there was no motion for mistrial, there was no motion to strike, there was no motion for a cautionary instruction. And so if it was as prejudicial as is now being described by the appellant, something would have been done at the time it was happening. And it wasn't. Mr. Grudberg and his co-counsel sat there and let it happen. Judge Shea stepped in and said that's enough counsel. And when he said it, believe you me, I stopped. And so that's really the record here. I think the concerns your honor is expressing are legitimate and under certain circumstances it could be a very unfair situation. In this case it was not. And it was not only- I was troubled. I don't know if this is you, but there's an excerpt from the summation, which is at the blue brief at page 27, which gives a lot more than two questions. Did you have sex with Eli at these New Haven addresses? He took the fifth. Did you force Eli to have sex in the bedroom of your house? He took the fifth. And there are six, seven, eight of those. And then you go on to call him, he has complicated and attempted to stifle the search for truth. It is calculated, manipulative, clever. This is how this man operates. He is contemptuous of the court, of me, of you, and of my client. Yes. I don't think I would have allowed that. You may not have, Judge. And if there had been a motion, Judge Shea may not have allowed it either. And that is- There was no objection, I looked. No. And that is me. And I can tell you, if your Honor had sat in on this trial, it is my belief that every member of the court here today would have reached those same conclusions. This was a man who lied throughout the case, who selectively invoked his Fifth Amendment rights, who kept the truth from the jury, not because of a legitimate concern about a criminal proceeding that may or may not have been pending at the time, but- That may be, but my concern is whether you're going too far in your summation to the jury. You're telling the jury that the defendant is being contemptuous of them. I don't know that that's an appropriate tactic. That may be a very legitimate view of trial practice. I don't happen to share it, but I don't disrespect it either. I will say that if that were perceived to have been the case in this trial at that moment, there would have been a motion from the defense and the judge would have shut me down. But be that as it may, this goes back to what I was asking your colleague, what are we looking for? I mean, is there a denial of due process? Is that the ultimate question? I think what you have to look for are the evidentiary rulings, because that's how it's been phrased by the defense, I mean by the appellant. So the appellant says, number one, I didn't get the instruction I wanted, and I think that issue's been put to bed. It wasn't responded to in the reply, and frankly, the judge gave the Brinks charge. So that's not an issue. Then the issue is what happened during the trial at the time that Rabbi Greer invoked the fifth. The only way to approach it, because of the way it's been framed and because of the way it evolved during trial, is as an evidentiary question. So it's an abuse of discretion standard, and the question for your honors is, did it become so unfair that Judge Shea abused his discretion in not granting an unrequested mistrial or reversing post-trial and sending us back for a new round? And- If you were to write on this, what do we say? I mean, what is the trial court supposed to do in dealing with these kinds of Fifth Amendment invocations by a party? I think you could even adopt Judge Winter's dissent as the majority opinion in this case, and it would still require upholding this verdict. And so I think what I would say, frankly- You didn't get to what he was concerned about. Yes, I think you can get to it, and you can say these are concerns, because they are. And I don't debate that, and frankly, if I were in Mr. Gruggberg's shoes, I would have been concerned too. I also would have been out of my seat objecting. But I think that the decision that could come out of this case could be, Judge Winter had it right in many ways. These are legitimate concerns. It is not a good situation for a civil defendant to be dealing with a criminal charge at the same time. Invoking the fifth has monstrous prejudicial possibilities. So therefore, the courts should do what Judge Shea did in this case. It gave an instruction in the middle of Greer's testimony, my examination, an instruction which, by the way, Mr. Gruggberg agreed with more than once on the record. It then gave that instruction again, the adverse inference instruction, saying you may but do not need to find that this is- Actually, let me interrupt for a second. What is the status of the state criminal prosecution? It is, it has not resolved. And I know from communications with the state's attorney's office and the New Haven Police Department that it is an ongoing, where in the process, I just don't know. I'm just thinking about how this might unfold in a future matter and whether a civil action such as this one would be postponed. I was surprised that that had not been the request in this case. There was no request to stay the civil case pending the criminal charge? There was not. There was an agreement, in fact, in the opposite. Judge Shea asked the question and it was agreed by Rabbi Greer and the school's counsel that the case should proceed. Thank you, your honors. I hear the rebuttal. Thank you, your honor. A couple points. First, on the very point the court just inquired about, it's a little misleading. There was no criminal charge pending at the time of the civil trial. Your honor is correct. Had there been a pending criminal charge, absolutely there would have been a motion to stay filed. A complaint had been made to the police. Charges had not been initiated. Charges were not initiated until about two months. There was a complaint but nothing was, no indictment, no- Correct, no- Charging document. That's correct. Second, the idea that we didn't object is absolutely false and is belied by the record. I express concern about the point your honor raised about what are we to do. In fact, in the pre-trial discussion about this issue and the argument on the motion in limine, when Judge Shea ruled against me, one of the things I suggested, and this appears at pages A-65 and 66, I suggested that let's agree on a script of sorts so we all know going in he's going to invoke. Let's agree on what questions can be appropriately asked, get the invocation, and we move on. Judge Shea said, I don't want to do that. You have to do a question by question. I then said to Judge Shea, I don't think I should be in the position of having to pop up repeatedly, appear obstructionist in front of the jury when everyone not in the jury box knows that there are going to be invocations in response to specific questions. So we raised that, but the judge didn't do that. You would have preferred one big question, did you ever sexually abuse him, and then he would invoke the fifth, and then that would be the end of it in your view? I would have preferred one, but I could see if the court said, oh, I'll allow two or three. But this piecemeal thing where, most importantly, plaintiff's counsel was given free reign to formulate his questions is really where the problem comes from. And it's not just one question. This came up early on, A-78, question. So you're not denying today that you sexually abused and assaulted Ellie Merlis on many occasions over a period of years when he was a child. I objected both to the form of that question and raised the Fifth Amendment. Court overruled the objection as to form. He invoked his privilege. And similar questioning came up when the issue arose, again, a little bit later. The complaint alleges that you forced Ellie Merlis, when he was a child, to have sex with him at a motel in Brantford. Is that true, an invocation of the privilege? I think the real problem with where the mindset that this open door permitted is set out in the portion of the plaintiff's brief that I quoted in my reply brief. It is clear from the damages evidence the defendants chose not to offer that they know, I know, Greer preyed upon and serially abused and molested a child. They know Ellie, Shira, and Dr. Ford are telling the complete and full truth. And they know that Ellie's mental and emotional injuries are catastrophic and permanent. That's in a brief before this court. That is absolutely inappropriate, and it is reflective and indicative of the mindset that infected the trial by trying to leverage the Fifth Amendment not in the way they were legitimately entitled to, but in a way that was exactly foreshadowed by Judge Winter in 1983 and unfortunately came true. It had an impact on this case. They got, it affected the case and a new trial should be warranted. Well, it surely had an impact. The question is whether it was so unfair that there was a deprivation of- And that's where I get back to the deadlock, Your Honor. Given that this case really did hang in the balance. All right. We believe it's appropriate. Thank you, Your Honors. We'll hear from Mr. Dressler. Good morning, Your Honors. May it please the court. My name is Lawrence Dressler. I am representing myself as a member of the public in the motions I filed. I just want to point out a few things about the briefs that were filed by the appellants. The appellants failed to point out in their briefs that the presumption they have to overcome in the two cases of CBS and US versus Graham is a strong presumption of the right to public access. It's not just a presumption, but a strong presumption. And- Mr. Dressler, what is your aim in publishing the video? Well- The transcript has been made public, right? Yes, the public- What do you hope to achieve by publishing it? The public has been following this in Connecticut and even in the New York area very closely. And I write about it in a blog that I have online. And people contact me all the time. What would they learn from the video that they don't know already from the transcript? Well, as the court in the CBS case, this court indicated that there's a big difference between a transcript and a video. I'm asking you, what will they learn, do you think? I think it could help the public bring, for example, with victims that come forward, as you see in the media, other victims become empowered to come forward when they see actual victims talking about their experiences, especially victims like Avi Hack, who was a Yale graduate, who was very prominent in- You acknowledge that victims of sexual assault have privacy interests? They have privacy interests, yes, I'm not discounting that, but there's- There might be strong privacy interests. There might be strong privacy, but to overcome the strong, compelling interests of public disclosure, which the case law says- Do you acknowledge also that the days of the Internet are different from the days of CBS, in that people can publish on YouTube or anywhere videos that will be disseminated around the world easily, right? Correct, and the fact that there's so much dissemination makes it even, I think today, the fact that this is disseminated, it's competing against millions and billions of websites. But wouldn't you acknowledge that the person who's a victim of sexual assault might have concerns that weren't fully considered in decisions rendered in the 1980s? Well, I think in this case, Avi Hack and Mr. Greer, they basically waived their rights. They didn't file a motion to seal, as was done in the other- A waiver suggests consent and knowledge. Knowing waiver, do you believe that by participating in the deposition that Mr. Hack consented to the dissemination on the Internet of video? He didn't file any motions to seal the deposition, or he didn't file any document. He didn't even file anything after I filed my request in the public court documents. He didn't file anything. He waited until Judge Shea sent him. Did he oppose your request initially? No, he didn't file anything. It was Judge Shea who actually issued an order that he be notified, and he had an attorney at the time, and it's all public information. Once notified, he did submit something, is that right? Yeah, at some point, yes, after that, he submitted. And the video you're seeking is the redacted videotape that was admitted at trial, is that correct? Yes. And you've reviewed the redacted transcript of that video? Yes. Isn't the video largely, a significant part of it, describe his sexual abuse and then sexual relationship with the rabbi? Yes. And it's- Was the video actually received into evidence? It was shown to the jury. It wasn't marked or listed as an- Demonstrative that was not actually received into evidence? It wasn't- It was a technical thing, but- Yes, it wasn't, that's one of the issues. It's also shaking his head, that's why- Yeah, it wasn't marked as an exhibit. I tried to obtain the actual video after the trial, and the clerk told me there is no video, so. You've written in your brief that the release of the video will only serve to encourage other victims to come forward and report abuse. I'm not sure I follow your logic if a victim who memorializes an account of an intimate and lifelong damaging event such as occurred here participates in that, that this will encourage other people to come forward with a possible downside of having a record of their own humiliating and horrible event be disseminated around the world. Could you explain what I'm missing in your- I think victims feel a lot of shame from coming forward, especially male victims, which you really rarely hear about, feel incredible shame, speaking of- So by requiring the victim who doesn't want his image disseminated to have it disseminated, that will dispel the shame? It's hard to say. Mr. Hack didn't object to really throughout the trial, before the trial, after the trial, and he avoided- He wasn't at the trial, was he? No, he avoided service. Both sides tried to bring him in. He didn't want to get involved. It seemed like he had no interest in the case until I brought this up with Judge Shea. All right, thank you very much. Thank you, Your Honors. Reserved decision on all aspects. The final two cases are on submission. I'll ask- I just had one point that may be helpful to the court on Your Honor's question about was the deposition received. It was the video excerpts played in court were never offered as an exhibit. The official court record is, with Judge Shea's permission now, the redacted transcript, and that appears as docket entry 293, and that's on page A49 of my appendix. Thank you. The final two cases are on submission. I'll ask the clerk to adjourn.